**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-3128 & 22-2903
_____

BOGDAN ROMANCE,

Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A207-668-427)
Immigration Judge: Donald R. Eller, Jr.

Submitted under Third Circuit L.A.R. 34.1(a)
September 27, 2023

Before:  KRAUSE, ROTH and AMBRO, Circuit Judges

(Opinion filed: April 15, 2024)

_____

O P I N I ON*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**ROTH**, Circuit Judge

Bogdan Romance, a Ukrainian citizen, was ordered removed after a hearing before an Immigration Judge (IJ). He seeks review of two decisions by the Board of Immigration Appeals (BIA): (1) its denial of his motion to reopen, and (2) its dismissal of his appeal from the IJ's denial of withholding of removal.[1] We will deny the petition for review.

I.    BACKGROUND[2]

Romance is a 48-year-old native and citizen of Ukraine. In 1997, he interned at a Ukrainian police department where he investigated cases of suspected corruption. While in that role, unknown assailants attacked him for conducting the investigations. Romance worked at a different police department (also in Ukraine) from 1998 to 2001. In 2000, Romance learned that a high-ranking official engaged in corruption had threatened harm to him and his family if he continued the investigation.

Romance asserts that in 2000 unknown assailants assaulted his brother and threatened to harm others in the family if Romance continued investigating. Romance testified that, shortly thereafter, unknown individuals set his father's vehicle on fire, severely burning him.[3] However, a work incapacity certificate, indicating that his father's burns were caused by a work accident, contradicted Romance's account. Romance also

---

[1] Although Romance makes a passing reference to a claim for asylum and CAT protection, he did not raise those claims before the BIA, so only his eligibility for withholding of removal and denial of motion to reopen are properly before us. Romance does not argue otherwise.

[2] These allegations are primarily based on Romance's testimony at his DHS hearing.

[3] Romance also claims he received a call from an unknown individual who stated that Romance's mother would also be burned if the investigation continued.

2

claims that, weeks later, he lost consciousness when three unknown men attacked him and tried to stab him. However, he regained consciousness and escaped with just a scratch, now a scar, on his arm.[4] The hospital record states that Romance sought treatment for a closed-head injury; there is no mention of an arm wound. Romance could not obtain police records for these events because he claims that the police refused to record them.

Romance entered the United States in 2001 on a tourist visa. His attorney allegedly advised him to falsely claim religious persecution because otherwise he was unlikely to be granted asylum.[5] Romance did not pursue any such claim at that time.[6]

In 2014, Romance returned to Ukraine. He testified that he returned because "maybe" his aggressors had forgotten about him.[7] He had also stated to the contrary that "those people" constantly asked his family about his whereabouts from 2000 to 2014.[8]

Later in 2014, Romance re-entered the United States using a fraudulent Hungarian passport. He testified that he lied to his wife, a United States citizen, by telling her that he legally changed his name and acquired Hungarian citizenship. She sponsored him for a green card based upon those lies. Romance claims that he only began using a fake passport in 2014 to avoid the individuals in Ukraine who attacked him in 2000. However, he also stated that those individuals did not know he was in the United States until 2018, when he was arrested and pled guilty to numerous charges.[9] Romance testified that the individuals,

---

[4] Romance showed the scar to the IJ.
[5] Romance testified that he decided not to follow this attorney's advice.
[6] As discussed below, he later sought asylum.
[7] AR 137.
[8] AR 139–40, 145.
[9] He pleaded guilty to fraud in the use of an immigrant document, 18 U.S.C. § 1546(a);

3

who had attacked him, repeatedly threatened his father and brother, who still lived in Ukraine. He asserts that he could not obtain supporting evidence from either father or brother "because of their fear of Ukraine authorities."[10]

Two months after his arrest, Romance applied for asylum, withholding of removal, and CAT protection, arguing that it was unsafe for him to return to Ukraine. The IJ denied Romance's claims, finding his testimony was not credible or adequately corroborated.

Romance appealed only the IJ's determination as to his eligibility for withholding of removal. The BIA affirmed the IJ's rulings, holding that Romance's testimony was not credible or adequately corroborated. Romance then filed a motion to reopen and to corroborate his claims, he attached affidavits from his father and brother.[11] He asserted that he was unable to obtain these statements sooner due to COVID-19 restrictions and his inability to locate his father. The BIA denied his motion as untimely because it was filed after the 90-day filing deadline and was not "based on a claim of materially changed country conditions arising in Ukraine."[12] No statutory exception applied. Because it denied the motion, the BIA did not consider the affidavits.

II.     DISCUSSION[13]

Romance petitions for review of the BIA's decisions denying his motion to reopen

---

perjury, 18 U.S.C. § 1621(1); use of a false social security number, 42 U.S.C. § 408(a)(7)(B); and identity theft, 18 U.S.C. § 1028(a)(1).
[10] AR 25.
[11] Opening Br. 15.
[12] Opening Br. Appx 8.
[13] The BIA's jurisdiction arose under 8 C.F.R. §§ 1003.1(b)(3) and 1003.2(c). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

4

and his application for withholding of removal.

A. Motion to Reopen.

A motion to reopen removal proceedings must be filed within 90 days of the removal order, unless an exception applies under 8 C.F.R. § 1003.23(b)(4).[14] However, "motions to reopen are especially disfavored in deportation proceedings"[15] and "are granted only under compelling circumstances."[16] We review the BIA's denial of a motion to reopen "under a highly deferential abuse of discretion standard"[17] and "may reverse only if the denial is arbitrary, irrational, or contrary to law."[18]

Romance's motion to reopen fails to acknowledge the filing deadline for a motion to reopen or argue that his motion met an exception to the deadline. Romance asserts only that he is entitled to have his case reopened because the Russian invasion of Ukraine, ineffective assistance of counsel, and COVID-19 restrictions prevented him from presenting certain affidavits to the IJ.[19]

---

[14] 8 C.F.R. § 1003.2(c)(2).

[15] *Darby v. Att'y Gen.*, 1 F.4th 151, 159 (3d Cir. 2021).

[16] *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004).

[17] *Alzaarir v. Att'y Gen.*, 639 F.3d 86, 89 (3d Cir. 2011).

[18] *Bamaca-Cifuentes v. Att'y Gen.*, 870 F.3d 108, 110 (3d Cir. 2017).

[19] Romance's motion to reopen vaguely refers to the conditions in Ukraine, but, as the BIA properly concluded, he did not argue that a change in country conditions excused his late filing. Additionally, he claimed in his motion that COVID-19 restrictions prevented him from presenting his case (i.e., the affidavits) before the IJ, but he does not assert that COVID-19 restrictions caused him to file an untimely motion to reopen. Romance has never asserted that equitable tolling applies, but even if we were to liberally construe his motion to reopen before the BIA as raising such an argument, *see Nkomo v. Att'y Gen.*, 986 F.3d 268, 272–73 (3d Cir. 2021), Romance waived the argument before this Court. *See Barna v. Bd. of Sch. Dirs. Of Panther Valley Sch. Dist.*, 877 F.3d 136, 145 (3d Cir. 2017) (explaining we have "long recognized . . . an appellant's opening brief must set forth and address each argument the appellant wishes to pursue in an appeal"). Additionally, while

5

Romance's motion to reopen was filed 154 days after the order of removal; this period far exceeds the 90-day deadline and was not based on an enumerated exception. Because we review a denial of a motion to reopen under a highly deferential abuse of discretion standard, we conclude that the BIA did not abuse its discretion by denying the motion to reopen. Further, because Romance's motion to reopen was untimely, the BIA properly refrained from substantively addressing the attached affidavits.[20]

B. Withholding of Removal.

The Attorney General may not remove an individual who has applied for withholding of removal to a certain country if the applicant establishes a "clear probability" that his life or freedom would be threatened in the proposed country of deportation.[21] Consideration by the IJ of the alleged threat may include an adverse credibility determination, based on the applicant's responsiveness, "the inherent plausibility of the applicant's . . . account," inconsistencies within the testimony or between the testimony and other record evidence, as well as "any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy or falsehood goes to the heart of the applicant's claim, or any other relevant factor."[22]

On appeal, we review the IJ's denial of relief to determine if it is supported by

---

ineffective assistance of counsel can serve as a basis for equitable tolling, *see Alzaarir*, 639 F.3d at 90, Romance did not raise this argument in his motion to reopen before the BIA and we decline to consider it. Indeed, he only argued that his counsel before the IJ was ineffective.

[20] *See Darby*, 1 F.4th at 164.
[21] *INS v. Stevic*, 467 U.S. 407 (1984); 8 U.S.C. §§ 1158(b)(1)(B), 1231(b)(3)(C).
[22] 8 U.S.C. § 1158(b)(1)(B)(iii).

substantial evidence.[23]  An adverse credibility determination must be upheld on review unless "any reasonable adjudicator would be compelled to conclude to the contrary."[24]

Considering the totality of the circumstances, substantial evidence supports the IJ's adverse credibility determination.  Romance gave inconsistent testimony and explanations for his conduct and failed to resolve any of those discrepancies on appeal.

Moreover, Romance provided an implausible story as to why he failed to file a timely asylum claim when he first entered the United States.  He stated that one attorney with whom he consulted advised him that his only option was to file a fraudulent claim of religious persecution because an asylum claim would fail.  But even if that testimony is true, Romance had earned the Ukrainian equivalent of a law degree and testified that he sought the advice of numerous attorneys.  Given these facts, the justification for his failure to timely file his asylum claim is implausible.

After reviewing the record as a whole, we conclude substantial evidence supports the denial of Romance's application based on an adverse credibility determination.

III.    CONCLUSION

For the forgoing reasons, we will deny Romance's petitions for review.

---

[23] *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).  We review legal determinations and constitutional claims *de novo* and will uphold factual findings supported by "substantial evidence." *Valdiviezo-Galdamez v. Atty' Gen.*, 663 F.3d 582, 590 (3d Cir. 2011) (quoting *Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir. 2003)).  Romance does not argue that the IJ's adverse credibility determination was not supported by substantial evidence. Rather, he dedicates only two pages of his brief to argument and claims that "the decisions of the [BIA] were arbitrary and based on erroneous fact finding and violative of due process and fundamental fairness."  Opening Br. at 18.  He did not file a reply brief.
[24] *Guo*, 386 F.3d at 561.